Good morning and welcome to the Ninth Circuit. We are somewhat in person and somewhat virtual. We are hoping by next month or the week after, month after, to go back to in-person arguments. We are hearing Prasad v. Garland, which was on the December calendar, but which we put over because of a council emergency. And so we will proceed to hear the argument. Mr. Taumier may begin. Thank you, Your Honors, and may it please the Court. My name is Mark Taumier and I represent Petitioner Dharmendra Prasad. Your Honors, I'd like to reserve three minutes for rebuttal. That's fine. Thank you. Thank you. Your Honors, I'd like to make three points today. First, that the BIA erred in denying Mr. Prasad his motion to terminate. Second, that the BIA erred in its denial of Convention Against Torture Relief. And finally, that the BIA erred in the particularly serious crime determination. On the first issue, as to the ineffective assistance of counsel claim, the parties agree that the BIA should consider that in the first instance. What's left is the motion to terminate. Now, the BIA determined that it had to deny that motion because Mr. Prasad was deemed not mentally competent to represent himself. The government contends that it's not clear what the BIA's position was here. Is your understanding that the government is not reading that motion as a motion to terminate or not? I mean, it is essentially saying the BIA didn't explain at all what Prasad's doing about any of this, just sent it back to the BIA, which presumably would include an implicit motion to terminate, right? If I understand your question correctly, I do think that they are interpreting it such that it's not clear whether it's a motion to terminate or not. I don't think the BIA had any issues understanding there was a motion to terminate. In the footnote, it seems pretty clear that they understand that it's a motion to terminate, and they deny it for a specific reason, namely that he's not, that is, Mr. Prasad is not. But how could we terminate, grant a motion to terminate, when there hasn't even been a hearing about whether there was an effective assistance of counsel? I mean, the reason, at least in criminal law, you can't automatically terminate. I mean, is your position that simply because he said he wants to terminate, he can terminate? Or does there have to be a predicate in effective assistance? No, I don't think there has to be a predicate in effective assistance, because this motion to terminate was for the proceedings before the BIA. The ineffective assistance of counsel claim has to do with the proceedings before the immigration judge. Now, Mr. Prasad, as you know, is a Franco Gonzalez class member, which means he's entitled to certain procedural protections. Amongst those is that he's entitled to a qualified representative, and that representative must be free of conflicts of interest and provide a zealous representation. Now, Mr. Prasad's counsel did not meet these criteria, and therefore, the motion to terminate was appropriate. As to conflicts of interest... But he says he didn't meet it, but there's, because the BIA cut the thing off at the pass, there's never been any determination that, in fact, he didn't meet whatever standards there are, didn't do what he asked him to do, or didn't have good reasons for not doing what he asked him to do. I'm a little concerned about our... I mean, is your position that he could simply terminate without having to demonstrate or even allege that there was any ineffectiveness? I think that it's not necessary that he allege that there was ineffectiveness at the stage of the immigration judge proceedings, but there has to be some showing that he's entitled to a qualified representative and that that qualified representative criteria has not been met, whether that's moving forward in the BIA proceedings. Here, I agree that the BIA did not consider the qualified representative criteria, but it did give a specific, even if incorrect, reason for its denial of the motion. It said, Mr. Prasad has been deemed mentally not competent to represent himself, and thus, we will deny the motion. I think that that's sufficient ground, that is, the qualified representative, the conflict of interest, the point that... So is the conflict of interest simply that Mr. Prasad thinks that this guy's doing a terrible job and has created a conflict of interest by bringing charges against him and so on? I think that's part of it, yes. So he brought the... He twice filed for the BIA to terminate the representation. He filed a bar complaint against this counsel, but in addition to that and separately from that, there's the criteria that the qualified representative provide zealous representation. And in this instance, it's effectively not possible for the counsel to provide zealous representation where the claims that Mr. Prasad sought to bring were ineffective assistance of counsel claims based on that counsel's past representation. So we think that there's plenty here to show that this court should reverse and remand with instructions to grant that motion and to appoint Mr. Prasad a qualified representative. Then it wouldn't be terminated in the further proceedings, right? That's right. I think that because he's a Franco Gonzalez class member and because he filed this motion pro se, the court should liberally construe this motion as a motion to substitute counsel and appoint a qualified representative pursuant to Franco Gonzalez. The BIA initially erred in your view by construing it as a waiver request, correct? And you're seeking it be remanded to construe it as a request for new counsel. Is that correct? I believe that's correct, Your Honor. Yes. Turning to the Convention Against Torture Analysis, I don't think that the BIA's analysis here was supported by substantial evidence. And the first point is that the BIA and the government here do not contest the point that Mr. Prasad suffered past torture. And as ordinarily the principle factor this court relies on in determining a likelihood of future torture. Isn't this all tied up together in that part of what he wanted to introduce, he says should have been introduced and wasn't by his lawyer, was testimony from his cousin in Fiji and from his wife and from others who could support his claim, for example, that the Fijian security forces were still looking for him and so on. So the CAC claim is certainly, will at least be stronger if that information should have come in and didn't come in. But for present purposes, if you want us to rule on it now, we have to rule it on the current record, right? That's right. And I don't think that that's an issue. I think that there's sufficient individualized evidence here. In fact, all the individualized evidence points in favor of a binding. Well, there's plenty of individualized evidence. The problem is how very long ago the original problem, you know, persecution or torture occurred. And in fact, I mean, I guess the connection to now is that in 2017, somebody's security forces said they were still looking for him to his cousin, but they didn't say what they were looking for him for or what they were going to do to him or anything like that, did they? From what we have now. Now, the cousin might have more to say, but we don't have it. Well, I think that that point that you raised, Your Honor, is a salient one. And that's that as recently as a year before the BIA rendered its decision, the military did stop Mr. Prasad's and asked about Mr. Prasad's whereabouts. And I think that the context of the additional facts, the 1994 visit where his house was, his cousin's house was raided, the fact that Mr. Prasad was tortured here, all point to the context that that stop wasn't a simple hello, how are you doing? How's your cousin, Mr. Prasad, doing? They wanted to know where he was because they intend to torture him. What about the particularly serious crime question? Do you think we should reach that as well? Yes. Well, I would say definitely. The particularly serious crime question, we've raised a host of issues, and the most important one for this court to consider is the fact that the BIA engaged in fact-finding when it determined that Mr. Prasad used a knife in commission of the 422 offense. Now, the immigration judge did not find that fact. The jury conviction of him stated- But that would just lead to a remand. And if we're going to remand anyway, I mean, it appears from the attached documents as to the actual conviction that he was acquitted of anything that required him to actually have the knife. That's right. And that it's not just that they engaged in impermissible fact-finding, but that the facts were wrong. Yes. The facts were wrong, and I completely- But we can't reach that now, so we can remand, but we would remand anyway if we'd simply remand the whole thing because of the ineffective assistance in motion to terminate, and then the right facts would presumably come in. If the court decides to remand and vacate the removal order and pursue the ineffective assistance of counsel claim, which I believe the parties agree should be done, then yes, that's true. But to the extent that the court thinks that it does not need to vacate the removal order, then I think it does need to turn to the particularly serious crime determination to the merits of the conviction of- But I'm right, am I not, that your theory that the BIA engaged in impermissible fact-finding would only lead to a remand? That's right. Yes. So we're in the same place, essentially. Yes. Okay. I will say, though, that on the Convention Against Torture point, we do believe that the facts all weigh in favor of a finding that Mr. Prasad is entitled to deferral of removal under the Convention Against Torture. So that would not just be a remand for additional fact-finding. That would be a finding that he is entitled to deferral of removal. Well, if we decided that, would the withholding claim still matter? Presumably yes, because I think he might get more out of the withholding claim. That's exactly right, Your Honor. I believe the cat is the most limited in terms of relief, and the withholding claim would entitle him to more relief. Unless there are any other questions, I'd like to reserve the rest of my time for rebuttal. Okay. Thank you. Mr. McManus. Thank you, Your Honor. Good afternoon, and may it please the Court. Keith McManus on behalf of the respondents. I believe Judge Berzon has identified an important point here, and I want to clarify the government's position on the remand request so that there's no confusion. We agree that the entire case should go back on remand, but the primary reason, again, with which the parties agree, is that the remand would be necessary so that the Board can address, in the first instance, petitioner's claims against his QR, not just the ineffective assistance that counsel claimed, but also the arguments he raised in his pro se papers, which essentially the Board just glossed over. I don't think there's any dispute that the footnote and the one or two sentences the Board dedicated to denying petitioner's motion to terminate his QR is all the reasoning provided. They said nothing at all about the other claims petitioner raised in his pro se papers, including his pro se notice of appeal, his pro se brief, the evidence attached to those papers, and his multiple letters and filings addressing ineffective assistance. There's work left for the Board to do, and it begins with addressing those claims. And ultimately, as Judge Berzon pointed out, there's really no reason for the Court to reach the merits or the substance of the claims for withholding that, because once the case goes back for consideration of the IAC claims, presumably all of the additional evidence and the arguments that petitioner hopes to raise by challenging his QR may, in fact, create a new record and a new basis for either a new hearing or additional evidence with respect to his claims. And so it would be premature for the Court to reach the substance and the merits of those claims now on the existing record. Well, it's not – well, two things. One is that – is it your position that the ineffectiveness would have to be proven before he could terminate his lawyer, or do we – I couldn't quite understand your opponent's answer on that question, but what is your position? So I think, Your Honor, that is a question that remains unanswered and can only be answered by the Board. And what I mean by that is, all we can really glean from the footnote – and I just want to make sure I have the language correct – the Board says we will not grant his request for termination, and then all it adds to that is a parenthetical citation to the Franco-Gonzalez Implementation Order, specifically the part of the order that says, class members shall not be found to have knowingly or intelligently or voluntarily waived their right to a QR. So in essence, as far as we can tell, what the Board is saying here is, keep in mind all of the procedural safeguards that Mr. Prasad had up until this safeguards consistent with the Franco-Gonzalez Agreement. What the Board is simply saying here is, we don't think it's consistent to let him part ways with his QR because that's not what the Implementation Order says. And unfortunately, the Implementation Order doesn't go any further than that to provide any sort of mechanism, or it doesn't even contemplate challenges to the sufficiency of a QR's representation. It certainly provides no mechanism for raising an IAC claim as Mr. Prasad did in this case. And so what we think, it is still left for the Board to decide in the first instance, and in the context of a Franco-Gonzalez class member, whether or not he can, in fact, terminate his QR, be entitled to further representation by a different QR, and then pursue his own pro se claims on appeal to the Board. Do you think that the fair reading of this motion was not that he wanted to represent himself, but that he wanted a new QR? Well, I will say, Your Honor, that's not clear. That could be a reading, but I will say he did not specifically ask. I think Mr. Tamayor even said that it should be liberally construed in that way, but he did not specifically ask for a new QR. He only asked to part ways with Precisely because he can't waive his right to a QR, he must be asking for a new QR. Well, again, Your Honor, that is the way it could be construed, but it's certainly for the Board to then decide what to do next. The Court cannot impose its will on the Board in this context because, again, the Board is beholden to the Franco-Gonzalez agreement, and there is nothing in there that required the Board, well I shouldn't say that, there's nothing in there that permitted the Petitioner to part ways with his QR and for the Board to allow him to certainly proceed unrepresented, but it would be up for the Board to decide how this would work in practice. Could he be entitled to a new QR? Absolutely. Would that QR then be allowed to help him pursue his claims against the former QR? Presumably, but it is still the Board's purview to decide how these claims should be addressed in the first instance. And again, what the government is acknowledging and what we mean to underscore by requesting voluntary remand is that the Board simply did not go far enough. It did not do the work that it was assigned to it with regard to Petitioner's pro se pleadings. Now, as to your second point, on the particular serious crime problem, I think the dialogue with Mr. Tamar demonstrated that in any event there would have to be a remand. It does seem like the Board got the facts just wrong and probably didn't have any right to make those determinations. With regard to CAT, though, if we thought the current record supported, was compelled to conclusion that there was a right to CAT relief, why would we remand it? Well, again, Your Honor, I think you raise the point and Mr. Tamar mentioned that there is additional evidence that Petitioner is attempting to submit with respect to both claims, both the PSC and the CAT determination. And with regard to CAT, presumably I believe the testimony of at least one, if not multiple cousins, one of whom was, again, the one whose house was raided in 1994 and who would have been approached on the street in 2017. And so, to be fair, we think, of course, the record does not compel reversal of the agency's decision on this record. But we do think that everything is wrapped up in the IAC claim to the point where it would essentially be an advisory opinion. Because even if the Court agreed with the government, for example, that the record as it stands does not compel reversal, there is still the possibility that the Board would grant Petitioner an opportunity to proceed with a new QR, which could potentially lead to a grant of his motion and a new hearing. It would have to be clear, though, if we did that, that we're not deciding anything on the current record and if the Board were somehow to deny him the right to make any additional record, he could still come back here on the original record. And we've had that problem before. We have had contentions by the government that you can't do that, but we have to be able to do that, right? No, absolutely, Your Honor. Nothing here would preclude Petitioner from raising his claims again if the record remained sort of in equipoise and never changed following remand. If the Board did its work and did take up the IAC claim, but nevertheless found on the merits, no error or no prejudice, or another reason to deny the request, then again, yes, there's no question that Petitioner could be right back up here in, you know, hopefully a short amount of time. But at that moment, the government would not stand in the way of him pursuing his claims as he has all along. The claims on the current record. I think that's right, Your Honor. As long as the record doesn't change, I don't see why. Again, it is hard to ignore the fact that his arguments, the claims against the QR, are wrapped up in the merits of his underlying application for relief and protection. On the PCR, particularly serious crime, PSC, do you disagree that the Board made fact findings that, first of all, in the first instance, and second of all, that aren't supported by the record, with regard to whether he actually had a knife during this earlier incident? We do disagree with that, Your Honor. Why? The application of the PSC factors, you know, is not, it's a legal conclusion. It's not a fact-finding endeavor. And here the Board necessarily considered the factual allegations as they were set out in the original claim. I'm sorry. But that makes no sense at all because it doesn't prove anything about what he was convicted of. That's fair, Your Honor, but that is the only evidence to which the Board... No, Mr. Prasad testified, and he testified that he was acquitted of having a knife. Well, he was acquitted of assault with a deadly weapon. He was absolutely convicted of criminal threats. Right, but not of having a knife. And the Board found that he had a knife, so there was evidence to the contrary. Again, Your Honor, the Board, there is no fact-finding by the Board here. The Board simply, in the only part of the record, or I beg your pardon, the only part of the Board's decision that makes any reference to the use of a knife is a quotation from the exhibit in the record. And it says simply this, count one of the complaint, quote, further charges, and it continues, and, of course, the use of a dangerous weapon to wit a knife. But there is no evidence that he was found guilty of count one of the complaint. I'm sorry? In that complaint. It turns out there was a different complaint, actually. Well, yes, and Your Honor, that was only raised, again, for the first time in Petitioner's Pro Se papers, which brings me back to the original point. All of this is wrapped up in the IAC claims. As the record stood before the Board, the only evidence upon which the IJ relied to make the underlying PFC claim was those conviction records. The verdict papers that Mr. Prasad submitted himself suggest that there was an amended complaint, but that's nowhere to be found in the record. And so the Board was left with only those allegations. And again, what it's doing is balancing Petitioner's otherwise credible testimony and weighing that against the conviction documents. And it is certainly entitled to do that. Congress has afforded the agency wide discretion in weighing the sufficiency, the credibility, and persuasiveness of Petitioner's testimony vis-à-vis conviction records, especially in this context. That's the teaching of Ming Dai. It didn't count one of the complaint itself say that the use of the deadly and dangerous weapon to whet a knife was not an element of the crime? I'm sorry, repeat that again. It didn't count one of the complaint itself say that having personally used a deadly  No, it was not an element. I believe that was an additional factor. Let me just pull it up real quick. It wasn't an element. It said that. The count once said that. So why is that in the BIA opinion? It's in the aggravating facts of that complaint, Your Honor. This is that page. No indication that he was found guilty of it. I mean, I do think that this was, you know, at least a procedural problem and possibly a substantive problem on its face without anything more. Well, Your Honor, the only reason it would become a problem is by virtue of the introduction of an amended complaint that doesn't exist in the records. No, it would be by virtue of the fact that the complaint itself that they were relying on said that this wasn't an element of the crime. But again, Your Honor, it doesn't have to be an element in order to be a particularly serious crime. This is not a per se categorical approach. So in other words, you're relying on the complaint as establishing a fact before the trial, when there was a trial? Well, I see your point, Your Honor. It's not a factual finding by the state court. So it doesn't count as a fact for purposes of PSC determination. Right. Yeah, no, that's fair. That's probably right. But again, the board didn't say that it was relying on the presence of a knife as being somehow dispositive or determinative. It was simply quoting the complaint. And again, I think what's really missing here and what I think is being lost in this is the fact that Mr. Prasad and presumably his Q.R. bore the burden of establishing that he was not in fact convicted of a particularly serious crime, which means if there is any countervailing evidence to show what he actually did or what he might have been acquitted of or convicted of, it was incumbent upon him to bring that forward. And again, we come back to his complaint is, well, my Q.R. should have done more. And the board can't really be faulted for relying on the only evidence to which it was, you know, I'm sorry, that was presented to it. By the way, there was a chart in the attorney's brief to the board of what he was convicted of, and it says that he was convicted of the charge of which he was acquitted. So the original, that is, the assault with a weapon. So it seems fairly plain that the, for whatever reason, this Q.R. did not know what had happened. Well, again, Your Honor, that's exactly the kind of claim that the board would have to address. And, you know, Mr. Prasad certainly raised those issues in his pro se papers, and the board, for whatever reason, glossed over them. And that is exactly why the government is requesting remand. But to deem both the particularly serious crime determination legally erroneous, which, again, the court can only do, you know, given the limited jurisdiction, or to find that the record compels reversal of the catanal, we think, again, would not only be wrong but also premature. We think the IAC claims need to be taken up in the first instance before either the agency or the court reaches a final determination on those claims. My time has expired, Your Honor, unless there are any other questions. Thank you very much. Your time has expired, and you were helpful, so thank you. Thank you. Mr. Chomier. Just a couple points, Your Honors. Thank you very much. First, I want to point out why it's important that the removal order be vacated. Mr. Prasad, he has been in detention. He's currently not in detention. But during these detention proceedings, an individual who has a final removal order over them, that factors into the analysis of whether or not they should be detained. Now, what the government is suggesting we do is keep that removal order in place, go back down to consider the ineffective assistance of counsel claim, and then maybe potentially— I didn't really understand that that's what it's saying. I was assuming that we would vacate the order because the order was improperly issued, because they didn't address this, which is what we usually do. I'm not going to ask the attorney for the government again, but that is certainly my understanding of how we proceed. If the board proceeded incorrectly in reaching this order, for whatever reason, we vacate the order. May I ask—this is somewhat irregular, but Mr. McManus, do you dispute that? Do you have to dispute, Your Honor, that you have the power to vacate the order? I think where the parties part ways is what the order would direct the board to do. I understand that, but you're not conclaiming we leave the order in place while the proceedings go forward? No, Your Honor, that's not necessarily how remand works. Right. My understanding is we vacate the order. So, assuming that, Mr. Tomiyo, what else? I think that's the main point. I would just mention that my colleague mentioned that it's the petitioner's burden, and that's true, but to the extent that the BIA engaged in fact-finding to fill the gaps where there were gaps in evidence, I don't think that that can hold up because that's just the additional fact-finding under the Brazilian case that's not permitted. And those are my primary two points. If there are any other questions, I'm happy to answer them now. Otherwise, I'd rest on my briefs. Did you notice that the chart that the former counselor attached to his brief to the board said that your client was convicted of PC-245A1, assault with a deadly weapon, not a firearm? Convicted sentence to six months in jail when he was actually acquitted of it? I'm sorry, what was the question? I'm just asking whether you noticed because you didn't mention that the chart attached to the brief to the board by the counsel who Mr. Prasad wants to terminate said that he was convicted of assault with a deadly weapon and sentenced to six months in jail when, in fact, he was acquitted of it. I am aware of that fact. I believe we mentioned it in our opening briefing. I don't remember that. Okay. Thank you very much, both of you. An interesting case, and we will submit the case and adjourn. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: BERZON, BEA, Bennett